## SUPREME COURT.

### The People ex rel. Coleman agt. Dikeman.

A mandamus will not be ordered at the suit of a person who has another appropriate and *adequate* remedy.

A mandamus is inappropriate, where there is a real and substantial dispute as to the title to an office.

Where the right of the applicant is clear and unquestionable, and the possession of the official books and papers is all that is necessary to enable him to perform fully and satisfactorily the duties of his office, a resort should be had to the summary process given by the statute (1 *R. S.* 124).

But where the title of the applicant is beyond a substantial dispute, and the possession of the books and papers would not give him the entire control of the office, and the remedy by the "action in place of *quo warranto*," would be so dilatory as to amount to a failure of justice, then the writ of mandamus should be awarded.

The case of The People vs. Steele (2 *Barb. S. C. Rep.* 398), not fully approved.

On an application for a mandamus the affidavit must not be entitled. The 406th section of the Code does not affect proceedings upon mandamus.

*Kings County Special Term, September* 1852. *Application for an alternative mandamus.* The trustees of the village of Williamsburgh, Kings county, were by an act of the legislature of May 21, 1836, authorized to erect therein cells and prison rooms for the confinement and detention of prisoners from the town of Bushwick and from said village: and also from time to time to appoint a cells keeper, whose compensation was to be paid by the county. By an act of the 15th March 1848, the electors of said village were authorized to elect a cells keeper, who was to hold his office for one year and until a successor should be elected and duly qualified. The defendant was duly elected cells keeper under said last mentioned act, at the village charter election on the 2d Tuesday of April 1851, and has continued thereunder to discharge the duties of said office.

The city of Williamsburgh was incorporated by an act of the legislature of April 7th, 1851, which took effect as to the election of officers on the day of the next general election, and as to the residue of the charter on first Monday of January 1852.

Under it, the term of all officers elected or appointed under the village charter was to expire on the first Monday of January 1852. It repeals the act of 1848, and several other named acts, and all acts and parts of acts inconsistent with the charter. By the 11th section of title 10, " the city of Williamsburgh succeed to all the rights and liabilities of the corporation of the trustees of the village of Williamsburgh," &c. By the 11th section of title 2, the common council shall have " power to make," &c. " ordinances, rules, regulations and by-laws, to manage and regulate the real and personal property of the city," and also " to make," &c. " all such other ordinances," &c. " as they may deem necessary and proper for the good government and prosperity," &c. " of the city and its inhabitants." There is no express provision in the charter as to the election or appointment of cells keeper.

On the second day of February 1852, the common council (as appears from an extract from their minutes) proceeded to ballot for cells keeper and on the fourth ballot the relator received seven out of twelve votes, and was declared elected. On defendant's refusal to surrender the office, the relator obtained an order to show cause why an alternative mandamus should not issue. The relator's papers were entitled as in the action.

WM. RICHARDS and E. D. CULVER, *for Relator.*

JOHN DEAN, *for Defendant,* cited the following authorities: 5 *Hill,* 616; 2 *Barb. R.* 513; 3 *Johns. Cas.* 79; *Angel & Ames on Corporations,* 709; *Wilcox on Corp.* 356, 357, 363; 10 *Wend.* 393; *Code,* § 432; 2 *Comstock,* 490; 3 *T. R.* 575; 2 *Hill,* 196.

S. B. STRONG, Justice.—The relator claims to be the duly appointed keeper of the cells or prison rooms in the city of Williamsburgh, and has applied to this court to issue a writ of mandamus, requiring the defendant, who is in the actual occupancy of such cells or prison rooms, by virtue or under color of an election to the office of keeper by the inhabitants of the then village, now city of Williamsburgh, on the second Tuesday in April 1851, to admit the relator to the possession of the property, and to the performance of the duties of the office. The following is a

The People agt. Dikeman.

statement of the facts upon which the application is made and resisted:

The act of May 20th, 1836, relative to the confinement of certain persons in the village of Williamsburgh and town of Bushwick, authorized *the trustees of such village* to erect and prepare cells and prison rooms for the confinement of persons arrested on criminal accusations, and detained for examination or trial, and to appoint from time to time some suitable person to be keeper thereof, and to make rules and regulations for the detention and support of the prisoners. Under that act the trustees erected and prepared the cells, and from time to time appointed the keeper, until the act of the 15th of March 1848, relative to the town and village of Williamsburgh was passed. That act provided that such keeper should be *elected* in the said village for one year, and until a successor should be elected and duly qualified, but did not make any other change in, or to any greater extent repeal the act of May 20, 1836. The defendant was elected to the office of keeper by the voters of the village of Williamsburgh on the second Tuesday in April 1851. The act to incorporate the city of Williamsburgh was passed on the 7th April 1851, and took effect, as to the election of its officers on the day of the next general election, and in all other respects on the first Monday in January 1852. That act contains no specific provisions as to the election or appointment of keeper of the cells, but it expressly repeals the act of March 15, 1848. The 13th section of the 10th title provides that the officers to be elected at the town and charter election in April 1851, should hold their offices until the first Monday in January 1852, when their terms of office should expire, as should also the terms of all persons holding office by appointment from the trustees of the village elected at such election. The 11th section of the same title provides that the *City of Williamsburgh* shall succeed to all the *rights* and liabilities of the former *corporation* under the name of the Trustees of the village of Williamsburgh. There are some other provisions of the city charter which I may deem it necessary to quote, and their applicability (if any) to this controversy may be seen. On the 2d of February 1852, the board of aldermen (all the members being present) pursuant to a vote

The People agt. Dikeman.

then adopted, balloted for a keeper of the cells; and on the third ballot the relator received seven votes, being a majority of the whole number, and was declared elected.

The defendant objects to the affidavit on which the application is made that it is entitled in a suit, and that, as no suit was pending when it was made, that is a fatal defect. I am inclined to think that the objection is well founded (1 *Wend.* 291; 2 *John. R.* 271; 5 *D. & E.* 466). The 406th section of the Code declares that it shall not be necessary to entitle an affidavit in the action, but that an affidavit made without a title, or with a defective title be as valid and effectual for any purpose as if it was duly entitled, if it intelligibly refer to the action or proceeding in which it is made. This does not refer in terms to an affidavit which is entitled when it should not have been entitled at all; and if it had done so the 471st section expressly declares that until the legislature shall otherwise provide (which it has not done), the Code " shall not affect proceedings upon mandamus." As it is desirable, however, that the application should be decided on the merits, and there is a stipulation between the parties which in effect waives any objection that is merely formal, I shall proceed to discuss very briefly the material questions involved in this controversy. It has been long a settled general rule that a mandamus will not be ordered at the suit of a person who under the circumstances has another appropriate and adequate remedy. There is not, perhaps, any very good reason for continuing the rule, except that having always prevailed it can not now be changed by any power short of the legislature; but until thus changed it must prevail in our judicial tribunals. The Code undoubtedly in most cases provides another adequate remedy for one from whom an office is unlawfully withheld. By the 435th section and the six following sections an action may be brought by the attorney general in the name of the people, upon the complaint of any person rightfully entitled to an office, in which judgment shall be rendered upon the rights of both parties, and if the claimant prevail he may promptly obtain the books and papers of the office, damages by reason of its being usurped by his competitor, and the exclusion of such competitor from " the office, franchise or privilege," and recover the costs of

suit, and the defendant may be fined in a sum not exceeding two thousand dollars. These remedies are sufficient in all ordinary cases, and then a mandamus is unnecessary, and should not be granted. When, however, the title to an office preferred by a claimant is perfectly clear, and his admission to perform its duties and receive the emoluments, is resisted by a previous incumbent without a color of right, a mandamus for its sometimes speedy, and always energetic operation may be an appropriate remedy, and should then be issued.. There can, in such cases, be no reason for the delay usually attendant upon the proceedings substituted by the Code for the ancient writ of *quo warranto.* Indeed, such delay might in many cases be fatal to any substantial relief, as the term of office might expire before a judgment could be obtained. In such cases a summary process is given by the Revised Statutes (1. *R. S.* 124. 125) to compel the delivery of books and papers by (late) public officers to their successors; and where the possession of such books and papers is all that is requisite to enable the officer to perform his duties, that should be the only remedy; or at any rate a resort could not be had to the writ of mandamus according to the rule which I have mentioned. But in the case under consideration the control of the official books and papers, would not alone enable the applicant to perform the duties of the office. He would still need some additional measures to give him possession of the cell or prison rooms, and the custody of the prisoners.

The principles which I am disposed to lay down in this case are, 1st. That a mandamus is inappropriate and should not be issued where there is a real and substantial dispute as to the title to an office. 2d. That where the right of the applicant is clear and unquestionable, and the possession of the official books and papers is all that is necessary to enable him to perform fully and satisfactorily the duties of the office, a resort should be had to the summary process given by the statute to obtain such books and papers, and a mandamus being unnecessary should not be awarded. But 3d. That when the title of an applicant to an office is beyond a substantial dispute, so that the objection to it is wholly frivolous, and the possession of the books and papers would not give him the entire control of the office, the remedy

The People agt. Dikeman.

by the proceedings substituted by our new Code for the writ of *quo warranto* would in many cases be so dilatory as to amount to a failure of justice, and the writ of mandamus would be proper and should be awarded. The case of The People vs. Steele (2 *Barb. S. C. R.* 307), would seem to extend the remedy by mandamus much further than I have gone in proceedings against corporations and ministerial officers; but the authorities quoted by the learned judge who decided that case do not warrant the extension of the rule in such cases beyond its ancient and well settled limits.

It is incumbent upon the applicant in this case to show that he has a clear right to the office in question, as the first requisite to entitle him to a mandamus. Has he done so? We have seen that the right to appoint the keeper of the cell in Williamsburgh was conferred by the act of 1836 upon the trustees; that such right was taken from them and the office made elective by the voters of the village by the act passed in 1848, which was in force when the city charter was granted. That charter does not in terms, confer the right to elect this officer upon the voters of the city, nor to make the appointment upon the board of aldermen. It was contended, however, by the counsel for the relator, that the right to make such appointment, although not specially mentioned, was included in some of the general powers conferred upon the common council. The 12th section of the second title, to which my attention was called, relates wholly to ordinances, rules, police regulations and by-laws necessary to carry into effect the powers conferred upon it by the charter, and also such as might be necessary and proper for the good government, order and protection of the persons and property, and for the preservation of the public health, peace and prosperity of the city and its inhabitants. If this section confers the power to pass an ordinance, rule, regulation or by-law for the appointment of the officer in question (which I am satisfied it does not), it no where appears that it has been exercised. The balloting and declaration were neither an ordinance, rule, regulation or by-law. Either of those provisions to be effectual must first be presented to the mayor, and either approved by him or (if vetoed) subsequently adopted by a two-third vote; whereas a simple appoint-

ment is effected by going into a ballot, and declaring its success-
ful result, and is not subject to the veto power (*Title* 10, § 1 *of
the City Charter*).

It was contended by the relator that by the repeal of the act
of 1848, the power of making the appointment in question was
again vested in the trustees under the act of 1836, on the well
settled principle that the abrogation of a repealing statute revives
the original enactment. The rule is general but not universal.
If in this instance the act of 1836, had again become fully
operative it would have restored the power of making the ap-
pointment to the same officers, but that could not be, as there
were no longer any *trustees of the village* when the act incor-
porating the city took effect. True the aldermen of the city
were, to a considerable extent, clothed with powers similar to
those formerly possessed by the trustees of the village. But they
were new officers, and when it was designed that there should
be a continuance of power it was specially mentioned, except
perhaps in the provision to which I shall presently refer. There
was no direct devolution of all the powers of the old board upon
the new one. In such cases the substituted officers take their
power by enactment and not by succession. They have nothing
except what is conferred upon them by their charter, either ex-
pressly or incidentally. The charter, as I have before intimated,
does not in terms confer the power in question on the aldermen,
neither does it clothe them with all the powers formerly possessed
by the trustees, nor is the power in question incidental to any
other expressly granted.

The only provision in the charter under which the power in
question can be claimed by the city corporation through *any*
of its departments, electoral, administrative or legislative, is
contained in the 11th section of title 10. It is, in substance,
that the corporation of the city of Williamsburgh should succeed
to all the *rights* of the former corporation under the name of the
*Trustees* of the *Village* of Williamsburgh. The word " right "
is defined by lexicographers to denote, among other things, pro-
perty, interest, *power, prerogative*, immunity, *privilege* (*Walker's
Dict.* word " Right "). In law it is most frequently applied to
property in its restricted sense, but it is often used to designate

The People agt. Dikeman.

power, prerogative and privilege, and especially when applied to corporations. Indeed, a large proportion of the rights of political corporations consists of the powers conferred upon them. Corporate powers are not generally exercised by the whole body. They are, to a great extent, delegated to its officers, and in municipal corporations to the different departments; those are generally electoral, legislative and administrative. The corporation has a right to its various powers to be exercised by its several departments or officers. Immediately preceding, and at the time of the passage of the act incorporating the city of Williamsburgh, the corporation of the village had the right to elect the keeper of the cell by the legal voters. That right, when the charter became operative, passed to the new city by a general term, and without any designated change. The obvious rule in such cases is that it passes with its *existing* incidents, and particularly with such of them as are essential to its exercise. The right of election was essential at the time, as there was not then any other way of choosing the officer. If such was the effect of the transfer of the right in question from the old to the new corporation, the virtual *continuance* of the power in the voters of the corporation to elect the officer granted by the act of 1848, saved it from destruction by the general repeal of that act, and of course the previously repealed provision on that subject contained in the act of 1836, was not revived.

If then any right in reference to this office was conferred upon the new corporation by the charter, it gave the power of election to the same department which it had immediately before. If no right at all was granted, it was not competent for the board of aldermen to make the appointment, and *quacamque via data* the relator has no title.

The motion for a mandamus is denied.