ON a writ of error to the Superior Court in and for Sussex County, heard before Saulsbury, chancellor, Comegys, chief justice, and Wootten and Wales, judges, Houston, J., absent.
Bradford for the defendant in error moved to dismiss the writ, because no writ of error will lie in the case, as it could not, in the nature of it, possibly be prosecuted with effect. The command of the writ was, by the express terms of it, to be performed on or before the 21st day of October then next ensuing, and no term of this court could be held for the hearing of it until the present term in June following the date of its issue out of this court, and therefore it must have been of no effect whatever. That there is in substance no case before this court. Union Church v. Sanders, 1 Houst., 100, 3 Min., 191; Constitution of the State, art. 6, § 19. The only question now here involved in the case is merely a question of costs, having nothing whatever to do with either the law or the justice, the facts or the merits of the case or the proceedings in it in the court below, and such a question merely is not sufficient, of course, to support a writ of error. And, besides, no cause of error has been assigned upon which the question of costs merely can be considered by this court. That no writ of error will lie to the awarding by the court below of a peremptory writ of mandamus in such a case as this was. *Page 284 
 Grubb for the defendant in error. Cited the case of 22 How., 174; 44 Pa., 332.
The Court declined to grant the motion and directed the counsel to proceed with the argument on the causes of errors assigned in this case.
Grubb then proceeded and read an argument of sixty-two printed pages to the following effect: This is a writ of error on the proceedings and judgment of the court below awarding a writ of peremptory mandamus upon the sworn petition of the plaintiff below, Ziba Ferris, to Edmund C. Knight, presiding officer at the election for an inspector, held on Tuesday, October 5, 1880, in the 14th election district of Wilmington hundred, in New Castle County, and to George W. Kennedy, Sr., judge of said election, commanding them to make and sign, and unite with Linsley L. Pierce, the other judge of said election, in making, signing and transmitting, as required by law, three certificates that at said election the said petitioner, Ziba Ferris, was elected inspector for the 14th Election District of Wilmington hundred. The said petition and affidavits accompanying the same were filed in the court below October 12, 1880. The same day a rule to show cause why a peremptory mandamus should not issue was granted, returnable October 15, 1880. On said 15th the sworn answers of the said respondents, Knight and Kennedy, were filed. Whereupon, after a hearing upon said petition, answer, etc., the said court, on the following 18th day of October, ordered that said rule be made absolute, and the peremptory mandamus was accordingly issued.
That it appeared from the record that no alternative writ of mandamus was asked for or issued in the case, and that there was no agreement between the parties to dispense with it, which was contrary to the established practice in the courts of this State in mandamus proceedings. It also appeared that said Linsley L. Pierce, one of the judges of said election, was not made a party to the said writ or proceeding; and, further, that Jesse U. Johnson, the opposing candidate to Ferris at said election, *Page 285 
was not made a party to the proceeding, and had no notice or opportunity to appear and defend the interest which he had in it.
The petition of the relator, as it appears of record here, in substance avers as follows: That said election was duly held by said presiding officer and judges October 5, 1880; that upon closing it, and counting and ascertaining the state of the vote and the result of the election, it was found there were but two candidates voted for, viz.: Ziba Ferris and Jesse U. Johnson, and the said presiding officer and judges declared that Ziba Ferris, having received the highest number of votes, was chosen inspector; that immediately thereupon the said presiding officer and judges signed three certificates of the election in blank, i.e., without having Ferris's name inserted therein, the same having been accidentally omitted; that subsequently on the evening of said election, after leaving the said place of election, and at the meeting at the city hall, Wilmington, of the presiding officers and judges of their respective election districts, and who by law constituted the board of canvass for assessor of the 2d Assessment District of Wilmington hundred aforesaid, the said Edmund C. Knight, presiding officer as aforesaid, inserted in said blank certificate the name of the said Jesse U. Johnson as the person elected inspector instead of the name of the said Ziba Ferris; that said insertion was made without the knowledge of the said Linsley L. Pierce, one of the said judges; that the said certificates so filled are illegal and void, and not such as are required by the statute prescribing the same; that the said presiding officer and judges have not transmitted any certificate of the election of said Ziba Ferns to him, nor to the clerk of the peace and the sheriff of New Castle county; that the said petitioner has demanded of the said election officers that they make, sign and transmit to him and the said clerk of peace and sheriff proper certificates of his election, and that said Knight and Kennedy have refused, but that said Pierce is willing to do so whenever Knight and Kennedy will join with him in doing it. He therefore prays for the peremptory mandamus, etc.
The sworn answer of the said respondents, Knight and Kennedy, *Page 286 
to the rule to show cause declares as follows: That the said election was duly and regularly held according to law, and immediately upon closing it and ascertaining the state of the vote, three certificates in due form, as prescribed by law, of the election of an inspector for said district, and made and signed by Edmund C. Knight the said presiding officer and George W. Kennedy, Sr., and Linsley L. Pierce, judges of said election duly chosen and qualified according to law, and certifying that Jesse U. Johnson was elected inspector for said district, were duly transmitted as follows, viz.: one of said certificates to the said Jesse U. Johnson, one other to the clerk of the peace of New Castle County aforsaid and the third to the sheriff of said county, as required by law, the said Jesse U. Johnson having had the highest number of the awful votes cast for the said office of inspector at the said election.
The testimony in the case before the court below will be found in the affidavits sent up was part of the record.
The errors assigned were in substance:
1. That the court below had no such jurisdiction of the matter mentioned in the petition as would authorize it to afford or apply thereto any form or manner of specific remedy whatsoever.
2. That by the statute, chap. 17, § 8, Rev. Code, it is provided that the presiding officer and the judges of the election for an inspector and assessor shall make and sign certificates of the result thereof, and shall cause the same to be transmitted as directed in said section; and further, that such certificates shall be conclusive and the election shall not be liable to be contested.
3. That mandamus was not an allowable form of remedy in such a case as this, because it is contrary to the settled principles and established rules governing the granting of such remedy.
4. That to allow it in this case would interfere with discretionary power and control the action, and dictate the decisions of public officers in matters exclusively within their own discretion. *Page 287 
5. That also it would test or determine a disputed question of title to an office, or of the right to the possession or exercise of the same.
6. That also it would in effect decide questions of grave importance concerning the official status, and determine the rights and title to a public office, of a person, in a proceeding wherein the same were drawn in question, and where such person was not a party to such proceeding and had no notice and no opportunity to appear and defend his interests.
7. That also it would prove nugatory, unavailing and futile.
8. That the right of the relator in the cause below was not sufficiently clear and free from doubt.
9. That the mandamus proceedings in the cause below were irregular, defective, insufficient and invalid and contrary to the settled rules of pleading and practice governing such proceedings in this State.
10. That said mandamus proceedings were irregular, defective, insufficient and invalid for want of an alternative writ, and the regular proceedings appropriate thereto.
11. That no notice of said mandamus proceedings was ordered by the said Superior Court and given to Jesse U. Johnson, whose official status and rights were shown by said proceeding to be involved in the result thereof.
12. That said Jesse U. Johnson was not made a party to said proceedings, and had no opportunity to appear therein and defend his interests.
13. That the granting of said mandamus would in effect impair and defeat the operation and purpose of the statutory provision respecting elections in said State within said 14th election district of Wilmington hundred in New Castle County, mentioned in the petition and proceedings in the said court below.
14. That Linsley L. Pierce, one of the judges of the said election for an inspector mentioned in the said relator's petition and the said proceedings in mandamus, was not made a party to said proceedings.
Before entering upon the main argument in the case, it will *Page 288 
be proper to consider as preliminary to it the question whether the pending writ of error will properly lie, and if so, whether it has lawfully operated as a supersedeas of the peremptory mandamus issued in the case. At common law a writ of error would only lie upon a final judgment or an award in the nature thereof, and the granting or refusing of. a peremptory mandamus was deemed such within the meaning of the rule. High on Extraordinary Remedies, § 536; Rex v. Dean and Chapter of Dublin, 1 Strange, 536. But this defect was cured in cases of mandamus in England by statute 6 and 7 Victoria, chap. 67. High on Ex. Rem., §§ 548, 556. In this country, the courts almost without exception regard the judgment of an inferior court awarding or refusing a peremptory mandamus after issue joined, as a final judgment to which a writ of error will lie. Ibid., § 557. And the Supreme Court of the United States has repeatedly held that a writ of error will lie in cases of peremptory mandamus. Columbian Ins. Co. v. Wheelwright, 7 Wheat., 534; Memphis v. Brown, 4 Otto, 715; United States v.
Addison, 22 How., 174, 184. And in numerous other cases. Its jurisdiction to grant writs of mandamus is conferred by the judiciary acts of Congress, and pursuant thereto they may be awarded when necessary to the exercise of its jurisdiction and agreeable to the usages and principles of law. U.S. Rev. St., §§ 688, 716; Kendall v.
U.S., 12 Pet., 622. It also has jurisdiction conferred by act of Congress to review upon writ of error final judgments of other courts therein specified. U.J. Rev. St., § 691. In the numerous cases in which said court has allowed writs of error upon mandamus, it is to be presumed that it has considered the award of writs of mandamus as final judgments, and has therefore rejected the rulings in the English cases which held the contrary view and denied the writ of error. Hartman v.
Greenhow, 12 Otto, 674. The cases cited also show that writs of error were equally allowable whether issued upon judgments in quo warranto,
mandamus or other forms of proceeding embraced within the cases of error entertained by said courts.
In this State the ancient doctrine of the English cases has been deliberately and authoritatively discarded by our court of *Page 289 
highest resort. Union Church v. Sander, 1 Houst., 100, 114. In that case it was unamimously held by the court that a writ of error would lie to the Superior Court upon a peremptory mandamus. It was there said by the chancellor who delivered the opinion: "The court has come to this conclusion upon what it considers as a reasonable construction of the clause in the seventh section of the sixth article of the Constitution, which provides that this court `shall have jurisdiction to issue writs of error to the Superior Court, and to determine finally all matters in error in the judgments and proceedings of said Superior Court,' and which, for this purpose, places the judgments and proceedings of that court upon original and on other than the common law grounds, and extends the jurisdiction of this court by writ of error to judgments or decisions in any proceedings in the Superior Court of a final character." This is a case directly in point with the present, and establishes beyond question in this State that the jurisdiction of this court in respect to writs of error in mandamus, as well as other forms of proceedings in the Superior Court, is conferred by the Constitution of the State, and is not derived from common law authority, or limited in its exercise by rulings in the English cases. The constitutional provision referred to is without exception or limitation. It matters not, therefore, what the form of action, or the proceeding may be; provided the judgment or the decision therein rendered by the Superior Court is of a final character, it is covered by it. Nor does it prescribe any value or amount involved in the issue as a prerequisite to the jurisdiction by writ of error in any such judgment or decision. But the provision of section 19, article 6 of the Constitution further provides and require security on appeals and writs of error, and which provision is also without any limitation as to the amount that may be involved in the judgment or decision, and such security having been given in this case by the plaintiff in the writ of error, it operated as a supersedeas of the proceedings in the court below as soon as the writ was issued from this to that court without any reference whatever to the amount involved in the controversy. The authority of the Supreme Court of the United States to issue writ of error in mandamus *Page 290 
cases is conferred by act of Congress. The authority of this court to issue a writ of error in mandamus proceeding in the Supreme Court is also conferred, not by the common law, but by the Constitution of the State, and in that respect the grants of jurisdiction are analogous, and independent of the common law. The Supreme Court of the United States has held that a writ of error on a judgment of ouster from a public office amounted to a supersedeas, notwithstanding the fact that the term of office would expire before the writ of error could be heard or decided, and remarked: "But it is said that the remedy by writ of error is inappropriate and ineffectual as the office of the relator will expire about the time the writ of error is made returnable. This may be a defect in the law, which the legislative power only can remove. A writ of error returnable instanter would give more speedy relief, and might be more satisfactory, but we must administer the law as we find it. We can entertain no doubt that the writ of error is the legal mode of revising the judgment of the circuit court in this case; and that security having been given on the judgment, as the law requires, it is superseded." U.S. v. Addison, 22 How., 174. This directly overrules the English decisions in Dean of Dublin v. Dowgatt, 1 Pr. Wins, 351 and Strode v. Palmer, 1 Strange, 538, which held that a writ of error would not be a supersedeas to a peremptory mandamus, and which have been unquestionably followed by such courts in this country as have announced a similar doctrine. The cases in the U.S. Supreme Court of Memphis v. Brown, 4 Otto, 715; Hudgins et al v. Kemp, 18 How., 535 and Milwaukee R.R. Co., 5 Wall, 188, are to the same effect as Addison's Case before cited.
In this ease now before court, as in the Addison Case, the question is concerning the title to an office of public trust the term of which would expire before this court could hear or decide the case in error. And yet, although in that case there had been a full investigation of the validity of the title and a verdict and judgment in favor of the defendant in error, neither of which is the case here, the writ of error was held to be a supersedeas of the judgment of ouster. It cannot be claimed that it is an office *Page 291 
exclusively for the benefit of the public in which Ferris has not any private interest, for by statute a judge of election for assessor and inspector is entitled to a specified compensation for his services, Rev. Code, 760, § 36. Nor can it be claimed that if the writ of error operated as a supersedeas there would have been no one to the then following general election in the district in question, for Johnson having received the prescribed certificate of election to the office, would have been prima facie inspector at that election, despite its being contested in this proceeding, and as a de facto officer merely, being for the public interest, he would have been competent to hold it. People v. Stephens, 5 Hill, 630; State v. Carroll, 38 Conn., 449. But even, if the writ of error in this case was not a supersedeas, it would nevertheless clearly lie under our constitutional provision and the ruling of this court in Union Church v. Sanders, 1 Houst., 100, and therefore it cannot be dismissed. Hudgins et al v. Kemp, 18, How., 535.
But no writ of mandamus should have been granted by the court below, for want of jurisdiction in such a case. The elections of assessors and inspectors in the several election districts in this State, and the presiding officers and judges and clerks of such elections, are solely provided for by statutes of the legislature, without any constitutional provisions whatever on the subject, and therefore any question which may arise as to the powers conferred by these laws on such officers, or on the courts of the State in relation to them, must largely depend upon the proper construction of these statutes, and the evident meaning and intention of the legislature in enacting them. The primary object was to have an election held bienially, on the first Tuesday in October, for the election of inspectors in the several hundreds or election districts in the State to hold the general elections in the same in the following November, only one month afterwards. The legislature must be presumed to have known the legal remedies applicable to controverted elections generally as well as in such a particular case, and also to have foreseen that it would be impossible for the courts to investigate and adequately and fairly try upon its merits, during such a brief interval, the question *Page 292 
of a disputed election to such an office, involving an inquiry into the legality of votes cast, and all other controverted facts and circumstances essential to the validity of it. For it could not have been properly done within that brief interval either on a writ of mandamus or quo warranto, and either of which after the necessary delay of the trial in the court below, would be subject to be still further protracted by removal on writ of error into the Court of Errors and Appeals. And this consideration was evidently sufficient to induce the legislature to provide, in express terms, that "such certificate shall be conclusive, and the election shall not be liable to be contested." Rev. Code, 113, § 8. This necessarily left the officers of such elections in sole and exclusive control of the subject, and their action final, unless, if corrupt or malicious, they might be liable to criminal punishment or civil damages, in an action on the case. And if the court below had no jurisdiction by mandamus, or other specific remedy in the case, it would seem that it would not have had such jurisdiction even where it was charged that the action of such election officers was wanton, fradulent, illegal and unjust. For, to determine the truth of such charges it would be necessary for them to inquire into the facts of the election, if they affected the question of title, especially where the answer, as in this case, negatived such conduct. It is therefore reasonable to infer that the legislature intended that they, or a majority of them, should have discretionary and summary power to correct manifest frauds or accidental errors, especially such as were indisputably clear, within their own knowledge, and had unavoidably come their notice, either in the election, or in the determining and certifying the result of it, in order to secure as fair an election as possible under the circumstances. For instance, such as refusing illegal votes offered, throwing out illegal votes improperly received, correcting a miscount, and the altering or substituting a certificate before actual delivery. Exclusive and final jurisdictionex vi, termini implies such power, according to every principle of reason and justice in law, equity, or morals. It is, in the nature of things, inherent in the office, otherwise, the plainest errors, and grossest injustice could not be remedied. The legislature meant *Page 293 
that legal and not illegal votes should elect, and that error in counting, or in filling the certificate with a wrong name, or in entirely omitting therefrom the name of the candidate elected, might be corrected, at the very least, before the certificate which the statute makes conclusive was actually delivered. There is nothing unreasonable or impracticable in this, nor in the view that little election officers, or a majority of them, shall have summary jurisdiction to insure as fair an election as possible under the circumstances, and one truly expressive of the electoral will, either by refusing to receive illegal votes, or by casting out such as were improperly received, or in otherwise securing a fair and just result. What is competent and satisfactory evidence for these purposes must ex necessitate rei rest solely in the discretion of said election officers. Their duties are judicial and discretional. They are, necessarily, the sole judges of the law and the facts; of the mode of proceeding, and of what will secure the best and most just result attainable under the circumstances. It is better to approximate to that which is just than obstinately to maintain injustice. Circumstances make it impossible for our courts to furnish an adequate specific remedy in such a case of disputed title as this, and therefore, exculsive and conclusive jurisdiction and control of the subject were vested unavoidably in the officers of said election. Nor is this the only instance of a grant of discretionary power, and without appeal in this State, especially in minor matters. There is no appeal from justices of the peace in civil cases where the judgment does not exceed five dollars, nor in forcible entry, and some others, nor is there from the decision of fence-viewers, and perhaps others which might be mentioned. It may be an unwise grant of power, but the legislature, impelled by a supposed necessity, have seen fit to confer it, and the legislative, not the judicial, is the proper body to revoke it. It may work hardship, and even a wrong without remedy, but this would not justify the court in usurping legislative authority in attempting to furnish a remedy, which is within the legislative discretion and power alone.
The statute referred to further provides: "Sec. 7. When the election shall be closed, the collector or other presiding officer *Page 294 
and judges shall forthwith read and count the votes given, and ascertain the number of votes for each candidate voted for as assessor or as inspector. The person having the highest number of votes for said offices respectively shall be chosen; but if two or more persons shall have an equal, and at the same time the highest, number of votes for either of said offices, the presiding officer shall give an additional casting vote." "Sec. 8. Immediately upon closing the election for assessor and inspector in the said election districts and ascertaining the state of the vote, the presiding officer and judges of the election in each of said districts shall make and sign certificates, according to law, of the election of inspectors, varying from the form prescribed for that purpose by omitting the assessor; and if including the election of assessor in such certificate, they shall make and sign a certificate of the number of votes given for each candidate voted for as assessor." It then prescribes the form of the certificate., and provides, in words already repeated and dwelt upon at some length, that "Such certificate shall be conclusive, and the election shall not be liable to be contested." The making and issuing of the certificate is the final action of the election officers and is made conclusive. It embodies their ultimate and complete determination of the actual and lawful result of the election. But until it has left their hands it is not unalterable or irreversible. After its delivery it becomes a finality, and thenceforward it is irrevocable and the election is incontestable. But any inquiry or correction or change in the cerificate or in ascertaining the result of the election made before that by the officers of the election is not a contest within the meaning of the statute, but the performance of an official function devolved upon them as the exclusive judges of the election.
Nor does the statute prescribe that the certificate shall be made and signed "forthwith" or "immediately" in the sense of instantly upon closing the election, but upon closing the election and ascertaining the state and result of the vote; and whatever time was reasonably necessary for that purpose was impliedly allowed by the statute, and according to sound authority, as well as reason, those words can only be deemed and construed *Page 295 
to be directory and not mandatory on their import. Ex parte Heath, 3 Hill, 42. Hence the correction of the count and the alteration of a certificate can be made before its actual delivery, and it does not seem necessary that such certificates shall be delivered until the date fixed by law for the deposit by the sheriff of the boxes, stamps, etc., with the inspector-elect of the general election, as prescribed by law. Indeed, since no precise place and day have been fixed by the statute for determining and declaring finally the state of the vote and the result of the election, there seems to be ample reason for the view that it is not indispensable that the same should be done either at the polls or on the very day of the election. In this ease it is claimed by the defendant in error that the result announced at the polls was changed, and aslo that the blank certificate was filled with Johnson's name instead of Ferris's, and that both the result and certificate were therefore altered by and with the knowledge and concurrence of a majority only of the little election officers. Also, that this was done at the city hall meeting of the election officers of the second assessment district, on the evening of the election, at the time and place at which the law required all the presiding officers and judges of every poll in the said assessment district to be present. Rev. Code, 131, § 9. Now, if Pierce, one of the judges of the 14th election district, was absent when Knight and Kennedy, the other judges, concurred in changing the incorrect result announced at their polls, and in completing and giving the certificate to Johnson, whom they had subsequently to the incorrect ascertainment of the result announced at the polls, found to have the highest number of lawful votes cast for the office, it was his own default. Being his own default, and in violation of the express requirement of the law that he should be there, neither he nor Ferris can justly complain that the majority gave the certificate in accordance with the true result found by them upon their revised count of the legal votes cast at the election. If the majority used Pierce's signature to the certificate, with their signatures to certify the true and lawful result of the election, they made no misuse of *Page 296 
it, for he will be presumed to have affixed it to the paper to certify the correct and legal result of the election.
That the legislature evidently intended to exclude from the jurisdiction of the courts any question or contest as to the validity of such an election is further strengthened and confirmed by the fact that it is the sole and singular example of the kind to be found in the statutes of the State, for it is nowhere provided in regard to any other of our elections that "such certificate shall be conclusive, and the election shall not be liable to be contested." And as a subordinate institution of the State government wholly originated and created by the legislative department of it, the legislature clearly had the power to so create and constitute it. Cooley's Const. Lim., 276; Conner v.
New York, 2 Sand., 355; Dillon's Mun. Corp., § 139, n. 1; Ibid.,
§§ 141, 143, 144; Ex parte Heath, 3 Hill, 52; Statev. Wil. City Council, 3 Harr., 307; Commonwealth v.
Dennison, 24 How., 66; Hartman v. Greenhow, 675; High on Extr. Rem., §§ 3, 4, n. 1; Cooley's Const. Lim,. 627. § 1.
But even in the absence of any general or special statutory prohibition, as in this case, the question of a legal right or title to an office cannot be tried upon a writ of mandamus, but the proper remedy for that purpose, in the absence of such a prohibition, is by information in the nature of a writ of quo warranto. High, Extr. Rem. §§ 5, 9, 19, 24, 42, 43, 46, 61, 638, 639; Ex parte Ostrander, 1 Denio, 682; Ex parte Newman, 14 Wall., 158; State v. McDonald, 4 Harr., 556; Cooley's Const. Lim., 623; Bailey v. Wiggins, 6 Harr., 462; State v. Porter, 4 Harr., 557; Grier v. Shackleford, 3 Brev., 491; State v. Warmoth, 23 La Ass., 78; People v. Dikeman, 7 How. Pr. Rep., 128; Aderson v. Colson, 1 Neb. 172; Goodrich v. Guthrie, 17 How., 305; Commonwealth v. County Commissioners, 5 Rawle, 75; People v. Supervisors of Greene, 12 Barb., 221; People v. Detroit,18 Mich., 384; People v. Stephens, 5 Hill, 621; Dillon, Mun. Corp., § 682; Haight v. Love, 10 Vroom, 476; State v. Constable, 7 Ohio, 11; St. Louis Co. Court v. Sparks, 10 Mo., 120; Commissioner v.
Perkins, 7 Pa. St., 44; People v. Forquer. Breese, 82. *Page 297 
It is also a fundamental principle of the law on the subject of mandamus that the writ will never be granted in cases where if issued it would prove unavailing, for whenever it is apparent to the court that the object sought is impossible of attainment for any sufficient cause, so that the granting of the writ must necessarily be fruitless, the court will refuse it. High, Ex. Rem., § 14; William v. County Comrs., 35 Maine, 345; People v. Chicago Albin R.R. Co.,55 Ill., 95; People v. Tremain, 17 How., Pr. Rep., 142; Universal Churchv. Trustees, 6 Ohio, 445; State v. Perrine, 5 Vroom, 254; Queenv. Norwich Saving Bank, 9 A. E. 729. It is a sufficient objection to granting the writ to require a board of canvassers of an election to declare the relator elected to a particular office, that the term for which he claims to have been elected will expire before any effectual action can be had in the case. For when the end for which a mandamus is sought cannot be attained, none of the machinery should be set in motion. High, Ex. Rem., § 64; Woodbury v. County Comrs.,40 Maine, 306; People v. Tremain, 17 How., Pr. Rep., 145. And as the court below in this case should have foreseen that it would come to this court upon a writ of error, and would inevitably be suspended for more than two months at least from that time before it could be heard and disposed of here, it was of itself alone a good and sufficient ground in law for refusing the writ at the inception of the case.
That the common law principles and rules of pleading and practice in mandamus proceedings prevail in this State, and accordingly that analternative instead of a peremptory writ of mandamus should first have been issued in the case. State v. Wil. Bridge Co., 3 Harr., 315, 541; Houston v. Levy Court, 5 Harr., 15, 16, 108; Union Church v. Sanders, 1 Houst., 100, 106, 134; Cannon et al v. Janvier, 3 Houst., 27, 30, 32. That the peremptory writ was invalid because no notice of the mandamus proceedings was ordered by the court below and given to Jesse U. Johnson whose official status and rights appeared thereby to be involved in the result thereof, and because he was not made a party thereto. 4 Black Cons., 283; Bloom v. Burdick, 1 Hill, 141; Rex. v. Bankes, 3 Bur., 1453; Strong's Case, 20 Tick., *Page 298 
486; Bracken v. Wells, 3 Texas, 91; Commonwealth v. Perkins, 7 Pa. St., 44; Rex v. Powell, 41 E.C.L., 578; High, Ex. Rem., §§ 9, 30. And also because Linsley L. Pierce, the other judge of the election, was not made a party to the proceeding, as it is a settled rule of practice that the writ of mandamus must be directed to the persons or officers legally bound to execute it and if a joint act is to be performed by two or more, the writ must be directed to all, though only some have refused to perform it, and the rest are willing. Dillon, Mun. Corp., § 699; Tap. on Mand., 310; Rex. v. Hereford, 2 Salk., 701; People v. Yates, 40 Ill., 126; State v. Cavanac, 30 La. Am., Path., I p. 237.
Bradford (Higgins with him) for the defendant in error. The court below has jurisdiction to issue the writ of mandamus against public officers in New Castle County. Const. Del., Art. 6, §§ 3, 11; Rev. Code, chap. 92, § 2, p. 564. The court below had jurisdiction to compel by writ of mandamus the defendants below to do what the relators petition set forth that they, as election officers, wrongfully omitted to do. The certificate of election provided for in the statute, Rev. Code, 113, chap. 17, § 8, which is to be conclusive, must be one which conforms to the mandatory requirement of the law. It must not be blank, but must contain the name of the person chosen inspector, as appears from the prescribed form set forth on page 113 of the Revised Code, and as is necessary in order that the sheriff may, acting under § 3, chap. 18, p. 117 of the Revised Code, know to whom to deliver the ballot boxes. It nowhere appears that the name of Jesse U. Johnson was inserted in the certificate by the authority of "the collector or other presiding officer and the judges." The certificates must be in accordance with the result of the election; for under § 8, p. 113, the certificates are to be certificates of the result of the election, in which the person "having the highest number of votes for said office shall be chosen." The ascertainment of the result of the election must be made at the counting of the votes; it cannot be made afterward, even by all the judges; a fortiori, not by any of them. If made at the counting of the votes, it cannot be subsequently altered. *Page 299 
If the certificates are fraudulent, they are void in law, for fraud vitiates every act. "Such certificates shall be conclusive, and the election shall not be liable to be contested." If these words mean that any piece of paper which purports to be a certificate, and which contains the signatures of the judges of election, shall be absolutely conclusive, then the earlier mandatory provisions of the law are rendered wholly inoperative. A statute should be so construed that all its provisions may stand and have effect, if possible. To contest the election, within the meaning of the statute, is to attempt to disturb or avoid the result as ascertained by the count of votes by the judges. But the proceeding in this case by writ of mandamus had for its object to establish, and not to disturb, the result ascertained and actually declared by the judges, to wit, that Ziba Ferris had received a majority of the votes cast. We do contest a fraudulent attempt to vary the result, but we do not contest the election itself. The judges of election have no authority to throw out votes after they have been deposited in the ballot box. The making and signing of the certificates in accordance with the result of the election, and transmitting them as required by law, are purely ministerial, and not judicial functions; they are imperative, and not discretionary, and hence mandamus lies to enforce their proper discharge. People ex rel Fuller v. Hilliard,29 Ill., 413; Strong, Petitioner, etc., 20 Pick., 484; Clark v. McKennie, 7 Bush(Ky.), 523; Kisler v. Cameronet al., 39 Ind., 488. The proceeding by mandamus could not determine the title to the office of inspector as between Ziba Ferris and Jesse U. Johnson, but a writ of mandamus properly lies to compel the election officers to furnish the evidence of the right of Ferris to the office; although what purported to be a certificate of election had been delivered to Johnson. People v. Matteson et al,.17 Ill., 167; People v. Rives, 27 Ill., 242; Peoplev. Hilliard et al, 29 Ill., 413; Strong, Petioner, etc., 20 Pick., 484; Ellis v. County Comiss., 2 Gray, 370; Brower v. O'Brien, 2 Cart. (Ind.), 423; Clark v. McKenzie, etc., 7 Bush, 523; State v. Circuit Judge, 9 Ala., 338; The King v. Mayor, etc., of York, 4 T.R., 699.
It is objected, that the proceeding by mandamus would prove *Page 300 
unavailing; but it is not to be presumed that the sheriff would disregard the judgment of the court rendered in it, and it was not to be presumed that resort would be had, under the circumstances, to a writ of error, even if a writ of error would lie. But the wirt of mandamus could properly issue, unless it was apparent that it would, necessarily, be inoperative. High's Ex. Legal Rem., § 14. For, whatever might be the final result, the relator was entitled to the relief he asked as a step toward the complete attainment of his rights. Peoplev. Canal Appraisers, 73 N.Y., 443. The objection that the right of the relator was not sufficiently free from doubt, it is submitted, raises a question of fact which is not now open for discussion.
It was not necessary that an alternative writ of mandamus should issue, under the circumstances in this case. Queen v. Fox, 2 Ad. El. (N.S.), 246; Comm'rs of Knox Co. v. Aspinwall, 24 How., 376;Ex parte Rodgers, 7 Cow., 526; Ex parte Goodell, 14 Johns., 325; People v. Throop, 12 Wend., 163; People v. Supervisors, 4 Hill, 20; People v. Bremian, 39 Barb., 522; People v. Assessors, 44 Barb., 148; High's Ex. Legal Rem., § 553; Tap on Mandamus, 407; State v. Elkinton, 30 N.J. Law (1 Vroom), 335; State v. Supervisors of Beloit, 20 Wis., 85; State v. Supervisors of Sheboygan Co., Ibid., 110; Justices of Clark Co. Court v.
Turnpike Co., 11 B. Mon., 143.
It would have been improper to make Jesse U. Johnson a party, but, though not a party, the record shows that he had notice of the proceedings. And, as to the like objection that Linsley L. Pierce was not made a party to the proceedings, the answer is, that Pierce was ready and willing to unite with the defendants in making, signing, and transmitting the certificates, and that a writ of mandamus does lie to compel one officer to unite with other officers in performing a public duty enjoined upon both by law. People v. Brennan, 39 Barb., 651. But, even if this objection had any ground to rest upon in the court below, it cannot be sustained in this court, because the objection is merely technical, and does not touch the merits of the case, and no merely technical objection can prevail if taken after the return of the writ of mandamus; they should be taken in limine *Page 301 
on a motion to quash it. This, therefore, now comes too late. Fuller.v. Plainfield Academic School, 6 Conn., 543; High's Ex. Legal Rem., § 523; Rex v. Mayor of York, 5 T.R., 66, 74; Queen v. Mayor of Stamford, 62 B. 433.
The rule to show cause takes the place of the alternative writ for the purpose of laying the foundation for granting a peremptory writ of mandamus. High's Ex. Legal Rem., 553. A party is not at liberty to rely upon one set of objections before the court below, and then seek to reverse their judgment upon grounds which had not been distinctly presented for their adjudication. A point not raised on the trial, cannot be entertained in this court on a writ of error. Preliminary objections, not affecting the merits, must affirmatively appear to have been taken below, or they will not be considered on appeal. 2 Tidd 1136, n. A.; Bowen v. Argall, 24 Wend., 496; Lewis v. Bank of Ky.,12 Ohio, 132; Durant v. Palmer, 29 N.J. Law (5 Dutcher), 544; Holden v. Cole, 1 Pa. St., 303; Hill on New Trials, 722. The entire case for the defendants below is contained in their affidavits filed as their return to the rule to show cause. Outside of the case made in these affidavits (and the two are identical), nothing appears of record by way of defence, and nothing else can be urged here.
The objection that the writ was not directed to Pierce with the two defendants, the other officers of election, was, in fact, not urged below, neither does it in any way appear of record to have been urged. Therefore, the defendant cannot, after the hearing below, raise this question in an appellate court. Even these affidavits of the defendants are not to be taken as evidence of their allegations, but only as pleading, and no arguments can be drawn from them as proven facts in the case. State v. Burriss, 4 Harr., 584.
This case is before this court on a writ of Error to the Superior Court in and for Sussex County, and the jurisdiction of this court is one of the many questions presented to us for consideration, and I will dispose of it first.
To determine this question, we need not look beyond the decisions of this court. We have one in the case of the Union Church v. Sanders, 1 Houston, 114. The case was fully and *Page 302 
ably argued before Chancellor Johns, Chief Justice Harrington, and Justices Milligan and Houston, at the June Term, 1855. Chancellor Johns said, in delivering the opinion of the court: "The court has come to this conclusion, upon what it considers as a reasonable construction of the clause in the seventh section of the sixth article of the Constitution, which provides that this court shall have jurisdiction to issue writs of error to the Superior Court, and to determine finally all matters in error in the judgments and proceedings of said Superior Court," and which for this purpose places the judgments and proceedings of that court upon original, and on other than the common law grounds, and extends the jurisdiction of this court by writ of error to judgments or decisions in any proceedings in the Superior Court of a final character. This decision, in my judgment settles, and ought to settle, finally the question of jurisdiction in the case now before us.
It has been often and well said that it matters not so much what the law is as to have it fixed and settled on some principle to be recognized as the law.
This question being thus disposed of, it becomes necessary to notice some others which were dwelt upon in the argument. Though I may not, perhaps, consider them all, I will a sufficient number of them, however, to settle the case before us.
Ziba Ferris preferred his petition to the Superior Court in and for Sussex County at the October term, 1880, then sitting in and for Sussex County, stating that on Tuesday, the fifth day of October, 1880, an election was held for the purpose of electing an inspector and assessor for the 14th election district of the hundred and city of Wilmington, the said district being in the ninth ward in the hundred and city of Wilmington, and that Edward C. Knight, George W. Kennedy, Sr., and Linsley L. Pierce were judges of the said election. That the petitioner received two hundred and four votes and Jesse U. Johnson recieved two hundred and three votes for the office of inspector, that the petitioner having received the highest number of votes was chosen as such inspector and that Knight the presiding office and the other two judges ascertained and declared that the petitioner *Page 303 
was chosen inspector of the said election district. The petition also states that these certificates of election were signed by the judges of said election, but that the name of the person elected was not inserted in the said certificates at the time they were so signed, and that notwithstanding the petitioner was elected inspector, the name of Johnson, the defeated candidate was afterwards inserted in the said certificates by Edmund C. Knight as the person elected as inspector instead of the name of the petitioner. The petition further alleges that the name of Johnson was inserted in the said certificates by the said Edmund C. Knight without the knowledge of the said Linsley L. Pierce, one of the said judges; that the said certificates so filled are illegal and void and not such as are required by the statute prescribing the same; that the said presiding officer and judges have not transmitted any certificate of the election of said Ziba Ferris to him; nor to the clerk of the peace and sheriff of New Castle County; that the petitioner has demanded of the said election officers that they make, sign and transmit to him and the said clerk of the peace and sheriff, proper certificates of his election, and that said Knight and Kennedy have refused, but that the said Pierce is willing to do so whenever Knight and Kennedy will join with him in so doing. The petition concludes with a prayer for a peremptory mandamus.
On this petition a rule was granted on Knight and Kennedy, two of the election officers, to show cause why such writ should not be issued.
Their answer is in the words following, to wit: that said election was duly and regularly held according to law, and immediately upon closing the said election and ascertaining the state of the vote, three certificates in due form as prescribed by law, of the election of an inspector for said district and made and signed by Edmund C. Knight, the said presiding officer, and George W. Kennedy, Sr., and Linsley L. Pierce, judges of said election, duly chosen and qualified according to law, and certifying that Jesse U. Johnson was elected inspector for said district, were duly transmitted as follows, viz.: One of said certificates to the said Jesse U. Johnson, one other to the clerk of *Page 304 
the peace of New Castle County aforesaid, and the third to the sheriff of said county, as required by law, the said Jesse U. Johnson having had the highest number of the lawful votes cast for said office of inspector at the said election.
Testimony was heard by the court for the purpose of ascertaining which of the two opposing candidates was elected, and after such investigation a peremptory mandamus commanding Edmund C. Knight, the presiding officer of said election, and George W. Kennedy, one of the judges of the election, to make and sign three certificates of the election of Ziba Ferns as inspector of said district, and to transmit one of these certificates to the said Ziba Ferris, one to the clerk of the peace and one to the sheriff of New Castle County.
This proceeding and action of the court below is not in accord with my experience of more than thirty-four years on the bench as to the law and rules of practice governing proceedings in cases of mandamus; and I prefer to adhere to the old maxim "Stare decisis." When we depart from it we shall soon find ourselves on a sea of uncertainty, and confusion without any settled rules of law or practice for our guidance.
The court, in my judgment, was not authorized to investigate or inquire into the facts as to whether the one or the other of the candidates was elected. It was not their province to do more than to ascertain whether the election officers had acted in the performanceof the duty imposed upon them, by the law which very clearly definestheir duty. If they had acted and exercised their discretion in the performance of their duty whether the discretionary power vested in them was properly or improperly exercised was not a subject-matter of review by the Superior Court or any other court, it had no jurisdiction to revise and reverse the action of the election officers and to dictate to them what they should do or to whom they should give certificates of election. The court below, in my judgment, transcended its jurisdiction and authority when it undertook to determine in anywise other than by the official acts of the election officers, whether the one or the other of the candidates was elected. In so doing it assumed the duties and functions of the *Page 305 
election officers. When it was ascertained by the action of the officers whose duty it was to hold the election and determine who was elected inspector at such election if they refused to make, sign and deliver the certificates required by law, the court on such a state of facts being made to appear would have been authorized in awarding a peremptory mandamus commanding the officers of the election to complete their duties by delivering certificates in accordance with the requirements of the law. This is what the law in this State, in reference to the writ of mandamus, has been held to be by our courts in more than one case. In New Castle County, Charles Allmond, recorder of deeds, was authorized by an act of the legislature to transcribe certain records and to index them and others, for which service the levy court was authorized and required to make him a fair and reasonable allowance or compensation. The work was done by Allmond and the levy court made him an allowance with which, however, he was dissatisfied, not, as he alleged being a fair and. reasonable allowance or compensation. He presented a petition to the Superior Court of that county praying that a mandamus might be awarded against the levy court commanding it to make the petitioner a fair and reasonable allowance, the petition stating the facts, but denying that the allowance made was a fair and reasonable one. The court refused the rule on the ground that the levy court had acted and exercised the discretion with which they were clothed by the law which imposed the duty on them, and that the Superior Court could not revise and reverse their action and dictate to them how they should exercise the discretion which the law requires them to exercise, making their act the result of their judgment, and not that of any other persons or tribunal.
Aside from all the matters I have been considering it is clear to my mind that the proceedings in the court below are erroneous, for the want of proper parties. The peremptory mandamus was awarded against Knight, the presiding officer, and George W. Kennedy, two of the judges of the election commanding them to do and perform the duties which devolved upon all three of the election officers and to join Linsley L. *Page 306 
Pierce, the other judge of election, in making and signing the certificates when it does not appear from the record that Pierce even expressed a willingness to sign a certificate of the election of Ferris except by the representation of the petitioner, so that if Pierce should refuse to act with the other two in obeying the peremptory mandamus, the court could not bring him within their jurisdiction and visit him with punishment for contempt of court.
When an act is to be preformed by two or more, the writ must be directed to all, though only a portion of the members have refused to perform the act or duty and the others are willing. This principle is sustained by numerous authorities. Dill. on Municipal Corporations, 699; Tapping on Mandamus, 310; Rex v. Husford, 2 Salkeld, 701.
It is by no means clear that Johnson, the candidate to whom the certificate was delivered, should not in somewise have been notified and afforded an opportunity to defend himself and maintain his rights. He was by the mandamus to be ousted and his opposing candidate, Ferris, placed in the office which he was informed by his certificate he was entitled to. Persons cannot be deprived of their rights without an opportunity of being heard and the privilege of maintaining them.
But aside from all these considerations, I think the law which provides for and regulates the election for inspectors is unmistakably clear and conclusive, and settles this case without any sort of doubt. Its language is, "that an election for the purpose of choosing an inspector shall be held by ballot in the several hundreds in this State, on the first Tuesday of October next before the time of holding the general election and at the places by law appointed for holding the general election."
The collector of each hundred shall be the presiding officer at the election so held in his hundred.
When the election shall be closed, the collector or other presiding officer, and judges, shall forthwith read and count the votes given and ascertain the number given for each candidate voted for as inspector.
The person having the highest number of votes for said office *Page 307 
shall be chosen; but if two or more persons shall have an equal and at the same time the highest number of votes for said office the presiding officer shall give an additional casting vote.
The collector or other presiding officer and the judges shall upon ascertaining the result of the election make and sign three certificates thereof, and shall cause the same to be transmitted without delay, to wit, one to the inspector elected, one to the clerk of the peace of the county, and one to the sheriff of the county. Such certificatesshall be conclusive, and the election shall not be liable to becontested.
Now, if I understand this statute, it emphatically declares, that elections for choosing inspectors for the several hundreds, shall not be contested, but the action of the election officers, when they have made and signed and delivered the certificates required by the statute, is final, conclusive and not to be set aside or annulled. Such electionshall not be liable to be contested, declares the law.
Now what are these proceedings but a contesting of the election of Jesse U. Johnson the candidate for inspector to whom the certificate of election was given by the officers of the election? Ferris claims that he was elected and petitioned the Superior Court to award a peremptory mandamus to deprive Johnson of the office and require the officers of the election to make and deliver a certificate to him (Ferris) notwithstanding, they had all made, signed and delivered one to Johnson, and the court awarded the writ after hearing evidence from witnesses examined before them to enable them to determine whether Ferris was elected, and all this was done without giving Johnson an opportunity to be heard in his defence and in the maintenance of his rights, so that each candidate would have had a certificate of his election, Johnson's signed by all the officers of the election and Ferris's signed by only two, so far as the writ of mandamus could be executed, since Pierce could not be required by it to sign a certificate of Ferris's election. Suppose both Johnson and Ferris had appeared at the place of voting on the day of election the one with a certificate signed by the presiding officers of the election for inspector and both the judges, and the other holding *Page 308 
a certificate signed by the presiding officer of the inspectors election and one of the judges thereof, both claiming by virtue of their certificates to be the inspector? by whom would such a contest have to be settled? such might have been the state of things if no writ of error had issued.
If the object of the proceedings was to try the right to the office of inspector the proper proceedings would have been by information in the nature of quo warranto. Angel Amies on Corporations, p. 684; The People v. The Corporation of New York. 3 Johnson Cases, 79; The People v. Hillsdale and Chatham Turnpike Co., 2 Johnson's N. Y. R., 190. Many other authorities could be cited to sustain this principle, and we have had some cases in our State, one of which was that by John Morris to try his right to draw a lottery under a statute of this State (not reported).
In such a proceeding both of the claimants to the office would have had an opportunity under proper pleadings to be heard and to produce evidence in support of their respective claims of right to the office, which was not so in the case of the peremptory mandamus awarded by the court below in this case.
Other questions were presented in the argument which I do not deem it necessary to consider and determine for the purpose of disposing of this case. If the conclusions to which my mind has been irresistibly led on the points I have already adverted to are correct, they are quite sufficient for the settlement of this case. If the officers of the election acted corruptly in the discharge of their duties they were amenable to the law, but in view of all the law and facts I am constrained to believe their acts could not be reviewed by the Superior Court or any other tribunal, but were final and conclusive. I am therefore of the opinion that the judgment of the court below was erroneous and ought to be reversed.
Saulsbury, Chancellor. The provisions of the act of the General Assembly of this State in respect to the election of inspectors applicable to the questions considered in this opinion are: That an election for the purpose of choosing an inspector shall be held *Page 309 
by ballot in the several hundreds in this State on the first Tuesday of October next, before the time of holding the general election, and at the places by law appointed for holding the general election.
The collector of each hundred shall be the presiding officer at the lection so held in his hundred.
When the election shall be closed, the collector, or other presiding officer, and judges, shall forthwith read and count the votes given, and ascertain the number given for each candidate voted for as inspector.
The person having the highest number of votes for said office shall be chosen; but if two or more persons shall have an equal and at the same time the highest number of votes for said office, the presiding officer shall give an additional casting vote.
The collector, or other presiding officer, and the judges shall, upon ascertaining the result of the election, make and sign three certificates thereof, and shall cause the same to be transmitted without delay, to wit: one to the inspector elected, one to the clerk of the peace of the county, and one to the sheriff of the county.
Such certificates shall be conclusive and the election shall not be liable to be contested.
Ziba Ferris preferred his petition to the Superior Court in and for Sussex County, at the October Term, 1880, therein stating, among other things, that an election was held in the fourteenth election district of the hundred and city of Wilmington, said election district being in the ninth ward, in the hundred and city of Wilmington, on Tuesday, the fifth day of October, 1880, for the purpose of electing an inspector and assessor for said district; and that Edmund C. Knight, George W. Kennedy, Sr., and Linsley L. Pierce, were judges of said election. That, at said election the petitioner received two hundred and four (204) votes, and Jesse U. Johnson received two hundred and three (203) votes, for the office of inspector. The petitioner also states that the petitioner having received the highest number of votes for said office of inspector was chosen as such inspector, and that Knight, the presiding officer, and the said two other judges, ascertained *Page 310 
and declared that the petitioner was chosen inspector of said election district. The petitioner also states that the petitioner and Johnson were the only candidates voted for at the said election for said office of inspector, and the petitioner received a majority of one vote for said office of inspector. It also states, that three certificates of election were signed by the judges of said election, but that the name of the person elected was not inserted in said certificates at the time the same were so signed, and that notwithstanding the petitioner was elected inspector the name of Johnson, the defeated candidate, was afterwards inserted in said certificates by Edmund C. Knight as the person elected inspector instead of the name of the petitioner. It is further stated that the said name of Jesse U. Johnson was inserted in said certificates as aforesaid, by the said Edmund C. Knight, at the instance and upon the fraudulent pretense by him of the assumed authority of the presiding officers of the judges of the election districts comprised within the said several assessment districts of the hundred of Wilmington aforesaid, at their meeting on the evening of the said election, after the said certificates had been signed as aforesaid at the "City Hall," in said hundred, for the purpose of ascertaining the number of votes given for assessor in the different election districts, and that the name of Jesse U. Johnson was so inserted as aforesaid in the said blank in each of said certificates without the knowledge or consent of the said Lindsley L. Pierce, one of the said judges as aforesaid, and contrary to the understanding and purpose of all said judges of said four-tenth election district when they signed said certificates as aforesaid. The petition also states that the said Linsley L. Pierce, one of the judges of the said election as aforesaid, is willing to unite with the said Edmund C. Knight and George W. Kennedy, Sr., as judges of said election, in making and signing certificates that the petitioner was, at said election, elected inspector as aforesaid, and in transmitting the same, as required by law, to wit: One to the petitioner, one to the clerk of the peace of New Castle County, and one to the sheriff of said County; and that, since the election the petitioner has made demand of the said Edmund C. Knight, as the presiding officer of said election, and *Page 311 
of George W. Kennedy, Sr., as one of the judges of the said election, and of Linsley L. Pierce, the other of the said judges, that they make and sign three certificates of the election of the said petitioner at said election as said inspector of said fourteenth election district, and that they transmit one of them to the petitioner, another to the clerk of the peace, and another to the sheriff of said county, and that Edmund C. Knight and George W. Kennedy, Sr., refused to comply with said demand, but that Linsley L. Pierce upon said demand expressed his willingness, and was and now is willing to unite with the said Edmund C. Knight and George W. Kennedy, Sr., in making and signing certificates, and in transmitting the same, as demanded by the petitioner, whenever the said Knight would and will do the same. The prayer of the petitioner was as follows: Your petitioner being without other adequate legal remedy in the premises, therefore prays your honors, that a rule may issue out of this honorable court, directed to and requiring the said Edmund C. Knight and George W. Kennedy, Sr., respectively, the persiding officer, and one of the judges of said election for inspector of the fourteenth election district of the hundred of Wilmington, in New Castle County, to show cause why a writ of peremptory mandamus shall not issue against them as such presiding officer and judge of election as aforesaid, commanding them to make and sign and unite with the said Linsley L. Pierce, the other of said judges of said election, in making and signing three certificates that at said election your petitioner was duly elected inspector for the said fourteenth election district of Wilmington hundred aforesaid, and in transmitting one of said certificates to your petitioner, one of said certificates to the clerk of the peace of New Castle County, and the other of said certificates to the sheriff of said county.
To support the petitioner's application for the rule to show cause, he at the same time filed the affidavits of four other persons, which are mentioned in the rule to show cause, viz.: Linsley L. Pierce, Francis E. Gallagher, Charles Grier and George B. Lewis. The court thereupon granted a rule upon the defendants to show cause why a writ of peremptory mandamus *Page 312 
should not issue against them "to make and sign and unite with the said Linsley L. Pierce, the other of said judges of said election in making and signing three certificates, that at the said election the said petitioner, Ziba Ferris, was elected inspector of the said fourteenth district of the city of Wilmington, hundred aforesaid, and in transmitting one of said certificates to the said petitioner, Ziba Ferris, one of said certificates to the clerk of the peace of New Castle County, and the other of said certificates to the Sheriff of New Castle County." The defendants respectively filed affidavits, designed by them as answers, in which, however, they did not, nor did either of them deny any material fact stated in the petition of the relator; but stated in substance that three certificates were made and signed by all the judges of the election, after the election was closed, and that one of these certificates was delivered to Johnson, he having a majority of the legal votes; and thereupon the rule to show cause was made absolute, and a peremptory writ of mandamus was awarded as prayed. Upon the judgment awarding this mandamus, the plaintiffs sued out a writ of error to this court, and it becomes our duty to decide whether there is error in the record and proceedings of the court below. The office of the writ of mandamus is to compel a corporation, an inferior court or public officer to perform some particular duty incumbent upon them which is imperative in its nature and to the performance of which the relator has a clear legal right. The remedy is extraordinary, and if the right is doubtful, or the duty discretionary or if there be any ordinary and adequate specific legal remedy this writ will not in general be allowed. In England, it is considered to be a prerogative writ, and so-called because the power to issue it was vested in the Judges of the King's bench, the court in which the sovereign is supposed to be personally present. It is a remedial writ, the appropriate functions of which are the enforcement of the duties by officers and others, who either neglect or refuse to perform their duty, and for the enforcement of which duties there is no other specific legal remedy. "Whenever," says Mr. J. Strong, in the case of the Commonwealth v. Pittsburgh, 34 Pa. St., 496, "there is a clear legal right in the relator, a corresponding *Page 313 
duty in the defendants, and the want of any other adequate and specific remedy," a writ of mandamus is the appropriate process. "In this country," says Mr. Dillon, in his work on Municipal Corporations, § 825, "The functions of the writ are fully as extensive as in England, although we have here given more scope to other remedies which often effect practically the same ends." The legislatures and the courts in modern times have improved and liberalized the proceedings by mandamus by relieving them of much of their former artificial and technical characters. Accordingly, he says upon high legal authority, "it is well settled that a mandamus in modern practice is nothing more than an action at law, between the parties, and it is not now considered as a prerogative writ. The right to the writ and the power to issue it have ceased to depend on any prerogative power, and it is now regarded as an ordinary process in cases to which it is applicable. It is a writ to which every one is entitled, where it is the appropriate process for asserting the right he claims." And such also is the modern doctrine asserted in well adjudged cases in the courts both Federal and State, in this country. Mandamus is not considered in England the proper remedy to try the right to a public or municipal office, and a mandamus to admit gives no title to the person admitted, but it enables him to try or enforce his right, and if there is another remedy open to the applicant as for instance an information in the nature of quo warranto, which lies where the adverse claimant or officer is in possession," a mandamus will not be granted against municipal corporations, but it will be granted, says Mr. Wilcox, "where quo warranto does not lie, although the office be already full, as otherwise in many cases the applicant would be without remedy."
In this country the same general principles are recognized, although there is some difference of opinion as to the scope of their remedy by mandamus where there is an officer or adverse claimant in possession.
It has been decided in New York that where a person is in office by color of right the remedy is not by mandamus to admit another having lawful claim, but by information in the nature *Page 314 
of a quo warranto. Ang. and Ames on Corporations, § 738; The People v. The Corporation of New York, 3d Johns (N. Y.), cas. 79; The People v. Hillsdale and Chatham Turnp. Co., 2d John (N. Y.), R. 190. It has been decided in New Jersey, says Dillon, "that mandamus lies to compel the city council to admit a councilman, duly elected to that office. But on the grounds that mandamus was not a proper proceeding to try the right to a public office the court declined to make an order to show cause in a case where the relator claimed to have been elected by the common council to the office of assessor, and also claimed that the council wrongfully deprived him of his office by refusing to count the votes of one of their members in his favor. Dillon, 843; People v. Detroit, 18 Mich., 338. In a case in 9 Maryland R., in which the claimant sought not only the removal of the incumbent but the possession of the office for himself, the objection was made that quo warranto and not mandamus was the proper remedy to try the title to the office; but the court of appeals held that the objection was not well taken and that the plaintiff need not resort to quo warranto as preliminary to mandamus, as this might prove inadequate, by reason of the delay it would occasion. The court was of opinion that mandamus to compel the defendant to surrender to the petitioner the office was the only complete remedy, since under the quo warranto information the judgment might amove the occupant but would not install the claimant. And the court further held that mandamus might issue, although the office was filled by the defendant, who claimed title. It admitted the conflict of decision on this point, but regarded mandamus as particularly applicable to the cause before the court. Mr. Dillon concludes his discussion of this question, § 846, in these words: There is much to recommend the views of the Maryland court in the case just referred to, since the delays of resorting to quo warranto are such, in consequence of the short terms of our elective officers, as generally to amount to a denial of justice. Before the quo warranto proceedings can be determined, the term of the claimant frequently expires, and a judgment in his favor is a barren victory. It is agreed that where for any reason quo warranto will *Page 315 
not lie, and there is no adequate remedy provided, the right to a disputed office may be settled on mandamus. Looking at the question in view of our short official terms, we should say that where the effect of compelling a resort to quo warranto would be unreasonably to delay the decision of the disputed right (which concerns not only the individuals, but the public), the court would be justified in interfering by mandamus, so far at least, to see that the incumbent is actually abona fide possessor of the place, and that there is real dispute and fair doubt as to which party has the legal title.
Amid this conflict of authority it might be presumptuous to express an absolute opinion of my own. I shall, therefore, in considering this case confine myself to two questions: First, had the Superior Court of this State, sitting in Sussex County, jurisdiction to award a writ of peremptory mandamus in this case? And second, if the court had such jurisdiction, was the writ, in fact, awarded in substance proper and sufficient in law. There is no doubt that the Superior Court of the State of Delaware, being the highest common law court of the State, has jurisdiction in all proper cases to award the writ of mandamus. By the Constitution of the State, the Superior Court has jurisdiction of all causes of a civil nature, real, personal and mixed at common law, and all other the jurisdiction and powers vested by the laws of this State in the old Supreme Court and Court of Common Pleas, and by § 1 of chap. 92, of the Code, it is declared that the judges of the Superior Court, or any two of them, shall hold pleas of assize, scire facias, replevins, informations and actions on penal statutes, and hear and determine all and all manner of pleas, actions, suits and causes, civil, real, personal and mixed, according to the Constitution and laws of this State, as fully and amply to all intents and purposes as the Justices of the King's Bench, Common Pleas and Exchequer of England, or any of them may or can do. Jurisdiction is of two kinds, one relating to territory and the other to the subject-matter of judicial cognizance. There is no difference as respects territorial authority between the courts of this State, for by the eleventh section of article 6, of the Constitution, it is declared that the jurisdiction of *Page 316 
each of the aforesaid courts shall be co-extensive with the State. Process may be issued out of each court in either county into every county. In respect to the subject-matter for the exercise of jurisdiction it will be sufficiently definite to say that the Superior Court exercises jurisdiction in respect to all matters purely legal, whether of common or statute law, the exercise of which is not vested in other tribunals, and being the highest common law court in the State it has the only authority in this State to award the common law writ of mandamus, an authority designed to be supervisory over all inferior legal tribunals, corporations, and persons bound to the proper discharge of authority with which they have been clothed by law for the public benefit. While the judicial power of this State is vested in the courts named in the Constitution, said courts have not, and neither of them has, as the Court of King's Bench has, any fixed place at which its sessions are held except the Court of Errors and Appeals, which is held at Dover. The Superior Court, Court of Chancery, Orphans' Court, Court of Oyer and Terminer, and Court of Sessions of the Peace in New Castle County, are held at Wilmington, in Kent County, at Dover, and in Sussex County, at Georgetown. The Superior Court may therefore be said to be, in fact, for most purposes, a county court. The reason why the Statute, chap. 91, of the Code, provides for the sessions of the courts in each of the counties was doubtless two-fold; first, public convenience, and secondly, because many subjects of adjudication, or rather things in respect to which adjudication in the courts might be necessary, were necessarily local in their character, and all contention in the courts in respect to such matters must necessarily be local and be determined in the county in which the controversy for determination arose. Now I know of no better distinction between a local and transitory action than this: "When the cause of action could only have arisen in a particular place or county it is local, otherwise it is transitory." In considering, therefore, whether the Superior Court had jurisdiction to award a peremptory mandamus, as it did in the cause before them in Sussex, it is important to ascertain whether the cause in controversy could have arisen in Sussex. The election for inspector was local; it was confined to the fourteenth election district, *Page 317 
being the ninth ward, in the city of Wilmington, in New Castle County. That particular election could not have been held anywhere else. Its officers could not have performed any duties in respect to it anywhere else. Must not, therefore, any judicial determination in respect to the duty of such officers and the exercises thereof by them necessarily be incepted and consummated in New Castle County? In the ease of Wayne Township v. Green Township, in the Supreme Court of Ohio, reported in Wright's Reports, page 292, it is stated that a rule was granted at the last term of the court, that Green Township, in Clinton County, show cause, etc., why a mandamus should not issue to compel them to levy a tax, etc. In that case the court said: "The application is in Warren County for a mandamus against a township in Clinton County. Why is the application made here? Generally, and for the most purposes, the Supreme Court in this State is a county court. We do not say that it is altogether so; that in no case will it exercise a general juisdiction through the State, or that in a proper case it may not grant a rule or take the incipient steps to a mandamus in another county than that in which it is to operate, but such rule is in general to show cause in the county where the writ is to operate, and where alone it must issue, let it be awarded where it may. The rule in the case before us has been improvidently entered and must be discharged." Now the jurisdiction of the Supreme Court of Ohio seems at that time (1831-2-3-4) to have been very similar to that of our Superior Court. In the preface of Wright's Reports, it is stated that the Supreme Court of Ohio was composed of four judges, the largest number the Constitution permitted. The Constitution required it to be holden in each of the counties of the State, and made any two of the judges a quorum. And such was the decision of that court in respect to the question I am now considering. Again in 2 Pickering, 397, it was decided that upon the application of a person claiming to be clerk of the town of Hampden for a mandamus to the former clerk a rule to show cause why it should not issue may be granted to be heard in another county, but the writ of mandamus must be returnable in Hampden. Why the rule to show cause might be granted to *Page 318 
be heard in another county does not appear. It seems that the court itself making this decision embraced three counties within its jurisdiction, and it may be that there was something in the Massachusetts' statutes that gave the court, for the purpose of expediting business, the authority to consider matters preliminary in their nature in a cause, in any county of the district, although proceedings final in their character were necessary to be had in a different county, or the county where the matter in controversy arose. Of this, however, I have no certain knowledge. What is the meaning of the eleventh section of the sixth article of the Constitution of this State, which declares that the jurisdiction of all the courts mentioned in the Constitution, not of the Superior Court alone, shall be co-extensive with the State, and that process may be issued out of each court in either county into every county? The provision evidently meant, as afterwards declared by statute, that the courts should hold sessions or terms in each of the counties, and that when such terms were being held, or it was necessary to issue process for any purpose in connection with the proper business of the courts in each county, the court in which the issuing of any process might be proper should have authority to issue such process into any other county and to compel obedience to that process. It never was designed to abolish the distinction between local and transitory actions, or to change the common law in respect to the place where and manner in which causes or controversies of any character within the jurisdiction of any of the several courts should be heard and determined.
This is the interpretation that the uniform practice of the courts has placed upon the section of the sixth article of the Constitution. No one ever supposed that a purely local action or one arising in a particular county of the State, and which could not have arisen elsewhere, could be heard and determined by the court in another county although the process of the court necessary and proper to be issued in the cause might, in the language of the Constitution, be issued out of the court in the county in which the suit or controversy was pending in either county into every county. *Page 319 
For the same reason and upon the same principle no rule to show cause in respect to a matter in its nature local, and no judgment absolute upon the determination of such rule can be heard or entered in any county other than that where the controversy necessarily arises. The language sometimes used in respect to a writ of mandamus may perhaps, with some persons cause an erroneous idea to be formed in respect to it. In England it is uniformly called a prerogative wirt because it was issued in the name of the king, and because the king was supposed to have a general supervision over all his courts and inferior tribunals, and because the writ was not issued to any intervening ministerial agency, but its command was given to the tribunal or to the persons bound to obey. And inasmuch as the king exercises this prerogative through his Court of the King's Bench, the power to issue the writ of mandamus was said to be the flower of that court's jurisdiction, and our American text-books and decisions abound in similar expressions.
Now these are very pretty expressions, without any very great substantive meaning at the present day in this State.
Many writs in England were prerogative writs, and in the same sense as that of the writ of mandmus, and every writ in the State of Delaware, issuing out of the Superior Court in the name of the State, and addressed directly to the parties bound to obey its mandate, is as much a prerogative writ as is the writ of mandamus. The writ of quo warranto is in the same sense a prerogative writ, and the same rule and principles in respect to the place where a writ of quo warranto shall issue and be determined applies equally to the writ of mandamus. If this be not so, I at least am not advised of any case in which the contrary has ever been decided.
Now, suppose a writ of quo warranto was proper to be issued against any of the public officers in New Castle County, as for instance, the clerk of the peace, or suppose it was necessary to issue such writ in a proper case against a corporation in New Castle County, could it be imagined for one moment that the writ should be issued anywhere else than in New Castle County? Why not? for the very simple reason that the cause of action could not arise *Page 320 
anywhere else than in that county. Ang. A. on Corp. (see also the case of The People v. Cycott, 15 Mich. Reports, 326). It is true that in some States it has been held that an information in the nature of a writ of quo warranto may be filed in any county, the process issuing thereon being made returnable in the proper county. It was so held in the case of the Commonwealth v. Smead, 11 Mass., 74, in which case the court said that the practice is too well settled to be now shaken, and no inconvenience can arise to the respondents in these cases, since they will be holden to answer only in their own county. This was approved in the case of the People v. Richards, 4 Cowen, 120. So also in the case cited from 15 Mich., where it was held that a proceeding by quo warranto in the Supreme Court to try the right to a county office is local in character, and must be sent for trial to the county where the duties are to be exercised. We, however, have no such practice as that mentioned in Massachusetts of initiating proceedings in any other county than that in which the case is finally to be determined, and I think it would be unwise to adopt such a practice.
I now refer to the second division, under which I propose to consider the matter before the court, viz.: If the court had such jurisdiction, was the writ, in fact, awarded, in substance proper, and sufficient in law? The prayer for the rule to show cause was, that a rule might issue directed to and requiring Edmund C. Knight and George W. Kennedy, Sr., respectively the presiding officer and one of the judges of said election for inspector of the fourteenth election district of the hundred of Wilmington, in New Castle County, to show cause why a writ of peremptory mandamus shall not issue against them as such presiding officer said judge of election, as aforesaid, commanding them to make and sign and unite with the said Linsley L. Pierce, the other of said judges of said election, in making and signing three certificates that, at said election the petitioner was duly elected inspector for the said fourteenth election district of Wilmington hundred aforesaid, and in transmitting one of said certificates to said petitioner, one of said certificates to the clerk of the peace of New Castle *Page 321 
County, and the other of said certificates to the sheriff of said county.
Now, under the statute, it was the duty of all three of the judges to make the certificates of election, and to transmit them to the person elected, the clerk, and the sheriff, and the application for the rule, as I apprehend, should have been made against all of them, and I know of no authority to the contrary.
The application (Tapping on Mandamus, page 290) for the rule should be made against all those, if more than one, whose duty it will be to execute the writ if it should ultimately issue. Thus, if several persons form but one artificial person they must all be made the subject of the same rule. The author refers to 3 B. C., 149, 152; Bull. N. P. R. v. Clenkeweell (Parish) Bull. N. P., 200.
Even in a case where a demand is necessary to be made before applying to a court for a mandamus, it is necessary that such demand should be made upon all the persons whose duty it is to do the act. In Tapping, before cited, 284, the author says: "But when two persons only are specially designated by the legislature to do a certain act, it is not sufficient to found an application for a mandamus to show that an application has been made to one of them only." And he cites R. v. London, 13 East, 425.
Again, the writ must be directed to all those who are legally bound to execute it. Tapping, 314. A breach of this rule renders the writ liable to be either superseded or quashed. Tapping, 314.
Again, the peremptory writ is, in general, issued against those who should have executed the first writ. Tapping, 414.
When two persons have been appointed commissioners bylaw, whose duty it is to perform some act required by law, and one of them refuses to join with the other in the performance of such act, the one willing to do his duty under the law may ask for a writ of mandamus to compel the performance of the act, but the writ, if awarded, must go against himself as well as his co-commissioner. This has been repeatedly decided, and is plainly laid down in the text-books upon this subject.
It would be useless to refer to all the cases to be found in the *Page 322 
books on this subject — in fact, it would be impossible to do so I know of no well-adjudged case contrary to the principle laid down in the text-books. I refer to one case, however, where the doctrine of mandamus in this respect seems to have been well considered by a court of high authority in this country. The case is The State v. Robert Jones and others, 1 Iredell's Reports, 129. In this court it was held that the writ of mandamus should be directed to all the persons whose duty it is to perform the acts required, though some of them may be applicants for the writ. In this case there were seven commissioners whose duty it was to do a specific act. Three of the commissioners filed a petition for a mandamus to compel the other four, in concurrence with them, to perform the specific duty, and an alternative mandamus was issued directed to the four only, which was returned with an admission of service by the three petitioners and an expression of readiness to perform their duty, whereupon a peremptory mandamus was ordered. It was held that the order for the peremptory mandamus was against all, and that the proceedings were sufficient. Gaston, Judge, in delivering the opinion of the court, says: "The objection that the writ should have been directed to all the commissioners, whose duty it was to perform the act required, has been strongly pressed upon us; and, to show that such is the regular course of proceeding, a case has been quoted from 2 Chitty's Reports, 254, where, on an application for a mandamus against one of the churchwardens of a parish, to concur in a rate with the overseers, it was said by the court: "You must take the mandamus against the whole of the parish officers, against yourself as well as against the other overseers; it has often been so done." We admit fully the correctness of the doctrine contended for by the defendants, and yet hold that their objection is not sustained. The writ might, indeed, have been more formally directed to each and every of the seven commissioners, but upon this record it must be held that it was so directed. The mandamus prayed for in the petition is a mandamus directed to all. The petitioners, three of the commissioners, admit service of the mandamus, and declare that they are ready to act. A writ is then *Page 323 
addressed to the other four only, because their colleagues have accepted service, and the act which the four are ordered to do, or shew cause to the contrary thereof, is an act in company with their colleagues, and which their colleagues are, by vitrue of their express assent of record, bound to join, under the penalty of a contempt. The three petitioning commissioners who acknowledge service of the alternative mandamus declare that they have no cause to show wherefore the act ordered should not be done, and if the others, to whom an opportunity is thus offered of shewing cause, offer none, then all having been directed to do the act, or signify wherefore they do not, the peremptory mandamus properly issues against all, as prayed for." It will be observed that the court, in this opinion, approved the doctrine in 2 Chitty — that the mandamus must go against all the officers whose duty it was to concur in performing the act, and that it must issue against those of them asking for the writ as well as those refusing to concur with them. The court say they admit fully the correctness of the doctrine contended for by the defendants, although in the particular case before them they held that the objection was not sustained, because the mandamus prayed for in the petition was a mandamus directed to all. The petition in the case before us did not pray for a mandamus directed against all three of the judges of the election, but only directed against two. In the case in Iredell the petitioners, three of the commissioners, admitted service of the mandamus and declared their readiness to act, and the reason why the alternative writ was directed against four only was because their colleagues had accepted service, and the act which the four* were ordered to do, or show cause to the contrary thereof, was an act in company with their colleagues, and in which their colleagues were,by virtue of their express assent of record, bound to join,under the penalty of contempt. Now, although the affidavit of Mr. Pierce, one of the judges, was filed before the issuing of a rule to show cause, he nowhere has admitted service of the rule, nor declared his readiness to act, nor was there any express assent on his part of record to the issuing of the rule or the peremptory mandamus, and consequently he was not bound to *Page 324 
join, under the penalty of a contempt, in making three certificates and delivering them as required by the act. He might, notwithstanding the issuing of the peremptory mandamus against the other two judges, have refused to join in making and delivering the certificates, and had he so refused he could not have been compelled to join therein, and could not have been punished for a contempt for his refusal. It won't do to say, that the petitioner states in his petition that Pierce was willing to do his duty. The court cannot assume, without his express admission of record, that he would so act, and upon such assumption award the peremptory writ against the other two judges. Courts do not, and should not, so act. Their commands should be such that obedience to them can be enforced, and not be dependent upon the voluntary action of any one. Had Pierce refused to act, he could not have been compelled to act, nor be punished for a contempt in refusing to act, and if the other two judges had made return to the writ that they were willing to act, but that Pierce would not join in acting with them, they could not have been punished for a contempt, and thus the command of the court would have been nugatory, and no advantage could have resulted from the issuing of the writ.
Again, in the case of Iredell, the court says: "The petitioning commissioners, who acknowledge service of the alternative mandamus, declare that they have no cause to show wherefore the act ordered should not be done. And if the others to whom an opportunity is thus afforded of showing cause offer none, then all having been directed to do the act, or signify wherefore they do not, the peremptory mandamus properly issues against all as prayed for." That is to say — after the admission by the three petitioning commissioners had acknowledged service of the rule, and admitted service of the alternative mandamus, and the other four commissioners had made no return to the alternative mandamus, the peremptory mandamus issued, was issued against all the seven. This case is wholly unlike the one before us, and instead of justifying the issuing of the peremptory writ against two only of the judges of the election, shows conclusively *Page 325 
that the peremptory mandamus was improper, and that it could only have been legally issued against all three of the judges, who were, by law, bound to make and deliver the certificates. To show that mandamus does lie to compel one officer to unite with the other officers in performing a duty enjoined upon both by law, we were referred the case of the People v. Prennan, 39 Barb., 651. This I do not deny, but expressly admit, it to be true. But how can such officer be compelled thus to unite with other officers? By awarding a writ of peremptory mandamus against all, to compel all to perform the duty, and not by awarding the writ against one to compel him to unite with the others, who have not, by their submission of record, consented to perform the duty. The defendant in error, however, alleged that the objections that Pierce, one of the judges, was not made a party to the proceedings below, cannot now be made, and that technical objections or that preliminary objections rather not affecting the merits must affirmatively appear to have been taken below, or they will not be considered on appeal, and that merely technical objections cannot prevail if taken after the return to the mandamus, and that they should have been urged in limine on a motion to quash, and that they now come too late. The doctrine upon this subject is thus stated by Tapping, 339: "Formerly, if the writ of mandamus were any way objectionable, an application to quash must have been made before return filed, for after that step taken the objection was considered as waived; but this doctrine, at all events, as to matters of substance, is now over-ruled, the court having, in numerous cases, permitted such an objection to prevail when a return has been argued; and in one case, after a return had been held to be had, exceptions were allowed to be taken to the writ in a subsequent term. The rule of law which now obtains upon this point is, that where a return is set down for argument on a concilium or demurrer, the defendant may take objections to the writ in matters in substance, for on a concilium the whole record is set down for argument, and the defendant has a right to object to the writ of mandamus in matters of substance, as much as a defendant has a right to object to a declaration where the whole record is set out upon demurrer or writ *Page 326 
of error after a plea in civil proceedings. Also, in the case of an indictment, to which there has been special pleas, the defendant has a right to object to the indictment for quod initio vitiosum est, non potest tractu temporis convalescere."
Again in the case of The King v. The Margate Pier Company, 5 B. . A., 220, where a writ of mandamus to a corporation, commanding them to pay a poor rate, omitted to state that the defendants had no effect upon which a distress could be levied, it was held that this was a fatal objection to the writ and might be taken after the return or at any time before the issuing of the peremptory mandamus. Abbott,
Ch. J., in delivering the opinion, of the court, said: "I am of opinion that it is not too late now to take an objection to the writ. Suppose an action brought for a false return, if the writ be defective, the party bringing the action can never be entitled to judgment. And besides, in a case like this, where there is no writ of error, the court will surely, at any time before a peremptory mandamus issues, suffer itself to be informed, and examine whether the writ is so framed as to give them jurisdiction. It is undoubtedly more convenient that such an objection should be taken at first, and that will probably account for the observations of Lord Kenyon and Mr. J. Buller in the case cited. But the other authorities, showing that such objection may at any time be taken, do not seem to have occurred to these learned judges, when those observations were made. Then, as to the objection itself, it appears to me that the ground of such an application as the present is, that there is no other remedy, and therefore, it is clear that the writ ought to state the fact distinctly; if not, it would deprive the defendants of the power of traversing that most material fact, for they are only to answer what is alleged in the writ. I think, therefore, that this is an objection in substance and not in form and that we ought to quash the writ."
This court has decided in the case of Saunders and the African Church, that a writ of error will lie to the judgment of the Superior Court awarding a peremptory mandamus. And it is to such a judgment that the writ of error in this case has been taken The object of the writ of error is to have a decision by this court *Page 327 
whether the court below could award the writ of peremptory mandamus they did award in the case before them. The objections which I have been considering to the jurisdiction of the court in the present case and its power to award the peremtory mandamus against two only of the judges holding the election in the fourteenth election district, in the city of Wilmington, are not technical or necessarily preliminary, but are of substance material and fundamental, and appear on the face of the record and proceedings transmitted to us. When the want of jurisdiction in the Superior Court in any action pending before it does not appear upon the face of the plaintiff's declaration, such want of jurisdiction can only be taken advantage of by a plea in abatement, and if such plea be not pleaded, but the defendant pleads in bar to the action and judgment is recovered against him, such judgment will not be reversed on writ of error, but if the plaintiff himself shows, by his declaration that the court had no jurisdiction to hear and determine the cause, objection to the jurisdiction may be made by demurrer, by motion for non-suit, by motion in arrest of judgment, and will be causes of error, for which the judgment below will be reversed. In the present case, if I am correct in the views already presented, the defendant in error, having made application for a writ of peremptory mandamus in the Superior Court in and for Sussex County, in respect to a matter and cause which could only arise and exist in New Castle County, presented a state of facts which show to the court below, and show to this court, that the court below had no jurisdiction in the premises. No plea in abatement was necessary, because every fact which could be disclosed by any such plea, if made by the defendant below, appeared in the petition of the petitioner himself. And therefore, upon the principle before stated, governing the determination of all civil causes in the court below, the petitioner showing that he had no status in that court by reason of its want of jurisdiction to hear and determine the questions presented to it, and that want of jurisdiction appearing to us by the record transmitted to us, we are not at liberty for this reason, as well as the other reason I have stated, to enter any other judgment but that of reversal of the one below. *Page 328 
There were many causes of error assigned to the record and proceedings below. I have considered two only, and express no opinion in respect to the others. It will be time enough to consider such questions when they shall arise in a cause depending upon their determination. It would have been more agreeable to me to have arrived at a different conclusion from that to which I have been compelled to come by my thorough conviction that the views I have presented are correct and should govern the determination of this cause. Though not bound to express any opinion as to the facts upon which the petitioner based his claim, yet I feel justified in saying that, if the facts stated in the petition for the writ are true, Mr. Ferris, and not Mr. Johnson, was chosen inspector at the election mentioned in the petition, and that the certificate of election should have been delivered to him and not to Johnson. The defendants below had the privilege of denying the statements contained in the petition, if they were not true, in their answer to the rule. They did not deny that those statements were true. They did not deny that Ferris was chosen inspector. They did not deny that he had one majority of the votes cast at the election. They did not deny that the certificates of election were made out in blank as to the name of the person voted for as inspector. Their answer was evasive, being simply that three certificates were made and signed by all the judges of the election, and delivered, one to Johnson, one to the clerk of the Peace, and one to the sheriff of New Castle County, he, Johnson, having a majority of the legal votes. Upon such an answer in a proper case, in which the court has jurisdiction, the court would be fully justified in awarding a writ of peremptory mandamus." After the votes were received by them as judges of the election and deposited in the box, their judicial functions ceased, and nothing remained for them to do but to count the votes, ascertain in whose favor the majority of the votes were east, and make and deliver the certificates of election as required by law. After the votes were so received and deposited, they had no right to refuse to count all the votes cast. They had no authority after that to pass upon the legality or illegality of any vote cast. After that they possessed no judicial authority whatever. The board *Page 329 
to determine who were elected assessors for the city of Wilmington had no authority whatever to determine any matter in respect to the question who was, or was not, chosen inspector in the fourteenth election district in the city of Wilmington. The judges themselves had no authority to choose an inspector for that district. The person having a majority of the votes voted was chosen inspector by the law, and not by the judges of the election or by any other person or persons whomsoever.
While my duty as a judge of this court compels me to decide that the judgment of the court below must be reversed, I do not intend that my opinion shall be used in support of, or to give countenance to, conduct which, as far as facts have been disclosed, meets my unqualified disapproval and condemnation. *Page 330